## Louisville & Jefferson County
## Air Board v. Riddle et al.

Dec. 7, 1945.

Davis, Boehl, Viser & Marcus for appellant.

James P. Miller and Robert Hubbard for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

This is an appeal from a judgment reversing the finding of the Workmen's Compensation Board that appellee, George R. Riddle, was not entitled to compensation and directing the Board to make an award in his favor. The sole question presented to us is whether or not the injury suffered by appellee arose out of and was received in the course of his employment. There is no contrariety in the facts (except as to the exact minute the accident happened, which we do not regard as of importance), hence the question is one of law and the Board's finding is subject to review by the courts. Rex-Pyramid Oil Co. v. Magan, 287 Ky. 459, 153 S. W. 2d 895; Bates & Rogers Construction Co. v. Allen, 183 Ky. 815, 210 S. W. 467; Hinkle v. Allen-Codell Co., 298 Ky. 102, 182 S W. 2d 20.

Riddle was night custodian at the Bowman Field Air Base (hereinafter referred to as the Field (located just outside of Louisville on the Taylorsville Road (hereinafter referred to as the Road). His hours for working were from 7:00 p. m. to 5:00 a. m., but he customarily arrived at the Field a few minutes before seven o'clock and went to work immediately upon his arrival; likewise, he often remained on duty a few minutes after five o'clock to check a mail plane if it arrived on time. His employer did not furnish transportation and Riddle reached his work by paying his fare on a public bus which he took every evening near his home in Louisville

at the hour of 6:30, and usually arrived at 6:45 at a bus stop on the south side of the Road opposite the entrance to the Field, located north of and abutting the Road.

There were many duties imposed on Riddle. He checked planes in and out of the Field; issued clearance papers to pilots; directed the parking of planes; and observed and checked to see if all lights were burning on the Field, including landing lights and obstacle lights on top of a string of electric poles along the south side of the Road to warn pilots of the poles and the wires they carried. While this pole line was not on the Field, yet the Air Board had installed the warning lights on the poles and through the Electric Company maintained these red lights on the top of these poles to warn pilots of a dangerous obstruction. Riddle had two offices, one on top of the Administration Building from which he could observe all lights on the Field, including the obstacle lights on the poles, and a smaller office down on the Field.

On the evening of October 30, 1943, Riddle left his home at 6:30, caught his usual bus from which he alighted at twelve minutes to seven on the south side of the Road in front of the entrance to the Field, which abutted the Road on the north. As he began work immediately on reaching the Field and was extremely busy when first arriving on the job, Riddle looked at the obstacle lights on the pole line on the south side of the Road as soon as he got off the bus. They were burning and he started across the Road from south to north to enter the Field. When he reached a point a foot or so north of the median line of the Road he was struck by an automobile driven by Jesse Quire (who had no connection with appellant and was driving on the public highway), from which he received injuries resulting in his permanent and total disability.

Appellant insists that the accident occurred off the employer's premises while the employee was on his way to work, therefore the injuries did not arise out of and in the course of his employment, citing many authorities, among which are Phil Hollenbach Company v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524; W. T. Congleton Co. v. Bradley, 259 Ky. 127, 81 S. W. 2d 912; January-Wood Co. v. Schumacher, 231 Ky. 705, 22 S. W. 2d 117; Lexington Railway System v. True, 276 Ky. 446, 124 S. W. 2d 467; Howard v. Dawkins Log & Mill Co.,

284 Ky. 9, 143 S. W. 2d 741. Also it cites in re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, which is one of the leading cases in the nation on the question of when an injury arises out of and in the course of employment.

The rule is well-settled in this and other jurisdictions as to when an injury arises out of and in the course of employment and both elements are necessary to bring the employee within the scope of the Act. It "arises out of" the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. It is in the "course of" the employment when received while the employee is performing some service for his employer in the line of duty. We have often said that the words "arise out of" refer to the cause of the accident, while "in the course of" relate to the time, place and circumstances of the accident. The above authorities sustain both of the propositions.

It is essential that the relation of master and servant exist in order for the Compensation Act to apply, and the test of its existence is the right of control. 28 R. C. L. section 55, p. 760; Bradley case, 259 Ky. 127, 81 S. W. 2d 912. As a general rule, that relation does not exist while the employee is off the employer's premises going to and coming from work, and while so injured the employee is not entitled to compensation. Schneider Workmen's Compensation Law, Vol. 6, Supp., p. 624; State Highway Commission v. Saylor, 252 Ky. 743, 68 S. W. 2d 26; Billiter, Miller & McClure v. Hickman, 247 Ky. 211, 56 S. W. 2d 1003. There are certain exceptions to the "going and coming" rule which are pointed out by Mr. Schneider in the above reference, but these have no application here. See Voehl v. Indemnity Insurance Co. of North America, 288 U. S. 162, 53 S. Ct. 380, 77 L. Ed. 676, 87 A. L. R. 245, and the annotations thereto at 250.

The facts in each particular case must be examined to determine whether or not the relation of master and servant exists at the place and time of the injury, Turner, Day & Woolworth Handle Co. v. Pennington, 250 Ky. 433, 63 S. W. 2d 490. In the instant case the Air Board maintained these obstacle lights on this pole line as a necessary adjunct to the Field, and the lights were as

much a part of the Field and its equipment as if they had been located within its territorial limits. No one could doubt that had these poles and lights actually been located on the Field and Riddle had suffered an injury while walking on his employer's premises to inspect the lights to see if they were burning, he would be entitled to compensation. So, when as a practical matter the employer's premises are extended to include obstacle lights on the south side of the public road, it follows that the injuries to Riddle arose out of and in the course of his employment.

A similar case is Bales v. Service Club No. 1, Camp Chaffee, Ark., 187 S. W. 2d 321, 326, where an employee of the Club was killed a few minutes before 7:30 a. m., the hour she was to report for work, as a result of a fall on an icy sidewalk in front of her employer's premises and 31 feet from her point of entrance. Compensation was allowed, the court in the course of the opinion saying: "True, the sidewalk was a public highway, but so much thereof as was in front of defendant's place of business was a necessary adjunct and used in connection with the business and in which the plaintiff was employed, and the sidewalk was, to a limited degree, and purpose, a part of the defendant's premises."

The Arkansas Court attached no importance to the fact that the accident happened a few minutes before the employee was to begin work and relied upon Cudahy Packing Co. v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532. However, in the instant case Riddle testified that due to his multiple duties and the fact that he was extremely busy when he first arrived at the Field he customarily inspected these obstacle lights when he first got off the bus. Also, his case is stronger than the Arkansas case inasmuch as his employer actually maintained the warning lights on these poles, and it was an important part of his duty to inspect them and report any that were not burning.

The judgment is affirmed.