[No. 39359.    Department Two.    October 19, 1967.]

JOHN L. PLAISTED, *Appellant*, v. HERBERT TANGEN *et al.*,
*Respondents.**

*Burns & Schneiderman* and *James D. Burns*, for appellant.

*Hullin, Ehrlichman, Carroll & Roberts*, for respondents.

HUNTER, J.—The plaintiff (appellant) appeals from a summary judgment entered by the trial court in favor of the defendants (respondents).

The plaintiff, John L. Plaisted, alleges in his complaint that he sustained injuries, by reason of the defendants' negligence, when he slipped on a loose sheet of plywood while attempting to enter a building being constructed by

*Reported in 432 P.2d 647.

the defendants, Herbert Tangen and Bertil Lundh, copartners.

The plaintiff is a painter and has long worked at his trade in the Seattle area. He was employed at various times by Tangen to do the painting on residence construction jobs contracted for by Tangen. The last such occasion was in 1957.

On June 3, 1964, Plaisted stopped off during the noon hour at a site where the partnership of Tangen and Lundh was constructing a bank building. He states in his deposition that he had noticed the name of his former employer on a sign and had decided to inquire about obtaining a contract to do the painting. He saw two men eating lunch and recognized one of them as an electrician he had seen before at other jobs. He asked the electrician if Tangen was available and was told that Lundh was supervising the job and that Lundh was away at lunch. He asked if the painting contract had been let but the electrician was unable to say. He then asked where the plans were so that he could inspect the painting specifications for the building. The electrician pointed inside the partially completed structure. Plaisted started to walk up a nearby entrance ramp, and while doing so he fell and was injured. The ramp was unfinished and covered only by three loose sheets of plywood, and Plaisted further stated in his deposition that one of these sheets slipped away as he stepped on it. The record shows the defendants had previously let the painting contract for the building.

The trial court, ruling on the defendants' motion for summary judgment, had before it the pleadings, the answers to interrogatories propounded to the plaintiff, and the depositions of Plaisted and Tangen. The court granted the defendants' motion and entered judgment dismissing the plaintiff's action, from which this appeal was taken.

The primary issue in this case is whether the plaintiff was an invitee of the defendants upon the premises where the injury to the plaintiff took place. It is the plaintiff's contention that such a relationship is supported by the facts

in this record, and that therefore it was the duty of the defendants to maintain the premises in a reasonably safe condition for him.

■ We had occasion to review the elements which the plaintiff here must prove in order to establish himself as an invitee, in *McKinnon v. Washington Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 414 P.2d 773 (1966). As applicable to the facts of this case, the test is phrased as follows:

> From as early as *Gasch v. Rounds,* 93 Wash. 317, 160 Pac. 962 (1916), this court has applied the so-called "economic benefit" test in determining whether an entrant to one's land is an invitee. Under this test, an invitee is one who is either expressly or impliedly invited onto the premises of another for some purpose connected with the business in which the owner or occupant is then engaged. To qualify as an invitee or business visitor under this definition, it must be shown that the business or purpose for which the visitor comes upon the premises is of actual or potential benefit to the owner or occupier thereof. *Dotson v. Haddock, supra* [46 Wn.2d 52, 278 P. 2d 338 (1955)]. It is reasoned that an owner or occupier is under no affirmative duty to make the premises safe for visitors unless he expects to derive some measure of economic benefit from their presence. That is, the affirmative duty of reasonable care is said to be thrust upon the owner as the *quid pro quo* for the expected benefit. 2 Harper and James, Torts § 27.12 at 1478 (1956); Prosser, Torts § 61, at 396 (3d ed. 1964). (pp. 648-49)

The plaintiff argues that, applying the *above* test to this case, he was impliedly invited to come upon the premises where the bank building was being constructed by the defendants. He asserts that the record shows it was the custom and practice in the Seattle area for painters to come upon construction sites and make inquiry for work; that this was the manner in which he obtained employment in the first instance from defendant Tangen; and that the prior employment relationship he had with Tangen was the basis for his reasonable belief that he was welcome on the premises.

The plaintiff therefore concludes that he was impliedly invited upon the premises for a purpose connected with the

business in which the defendants were then engaged, and that his purpose in making application for the painting work was a potential benefit to the defendants in the conduct of their construction business.

We agree with the holding of the trial court. The facts in this case do not bring the plaintiff within the ambit of the "economic benefit" test. The record shows that Tangen qualified his testimony by an amendment to his deposition, which was not refuted, stating that the custom of painters to make inquiry for painting work on jobsites involves only residential construction, since subcontracts for commercial construction are let before the work is started. Here, the painting contract had been let in advance of plaintiff's visit and we find no showing of an actual or potential economic benefit to the defendants by reason of the plaintiff's inquiry for work at the defendants' construction site.

■ The plaintiff further contends that he qualifies as an invitee under the proposition advanced by Prosser in Law of Torts § 61, p. 400 (3d ed.):

> [W]orkmen seeking employment, . . . are considered invitees when they come to a place which they have good reason to believe to be open for possible dealings with them, but not when they enter without such encouragement.

We find no showing in this record that the plaintiff was offered any encouragement to seek painting work on the defendants' construction site. A course of dealing between Tangen and the plaintiff, which came to an end 7 years prior, when Tangen was still in business alone, is too remote to warrant finding an implied invitation to the plaintiff to seek the painting contract.

The plaintiff contends that under *Haugen v. Central Lutheran Church,* 58 Wn.2d 166, 361 P.2d 637 (1961), the occupiers of land have a duty, running to all persons who have a legitimate reason to be there, to maintain the premises in a reasonably safe condition. We do not understand *Haugen* to so hold. That case is premised on the duty of the occupier of premises to an invitee. However, in *Haugen,* we

did cite *Ward v. Thompson,* 57 Wn.2d 655, 359 P.2d 143 (1961), wherein we stated:

". . . appellants owed a duty to maintain the scaffolding in a reasonably safe condition, and this duty extended to *all* persons standing thereon with the permission, express or implied, of appellants. By their very nature, any substantial defects in the construction of a scaffold necessarily involve recognizable risks of serious bodily harm to any persons standing on it. Cf. *Straight v. B. F. Goodrich Co.,* 354 Pa. 391, 47 A. (2d) 605 (1946). The duty of appellants to maintain the scaffold in a reasonably safe condition cannot be abrogated or altered on the basis of timeworn distinctions between licensees and invitees. Cf. *Mills v. Orcas Power & Light Co.,* 56 Wn. (2d) 807, 355 P. (2d) 781 (1960). Where the danger of harm is great, as it is with scaffolds, ladders, and the like, public policy requires that the occupier of the premises take the utmost precaution to keep such equipment in a safe condition." (p. 170)

The facts in the instant case do not bring it within the purview of this statement.

The plaintiff contends there is a genuine issue of fact as to his status as an invitee, and that the trial court therefore erred in denying him a trial on the merits.

■ We find no genuine dispute as to the material facts in this case. Neither is there a showing that additional evidence would be introduced by the plaintiff in the event he is afforded a trial. A plaintiff may not rest upon mere allegations. He must set forth specific facts showing there is a genuine issue of material fact for trial if he wishes to avoid a summary judgment. *Reed v. Streib,* 65 Wn.2d 700, 399 P.2d 338 (1965).

The judgment of the trial court is affirmed.

FINLEY, C. J., HILL, DONWORTH, and NEILL, JJ., concur.

---

January 15, 1968. Petition for rehearing denied.