# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
# DIVISION ONE

| | |
|---|---|
| EMILIO M. KOSROVANI, a single individual,<br><br>        Appellant,<br><br>        v.<br><br>ROGER JOBS MOTORS, INC. dba ROGER JOBS AUDI, VW, PORSCHE dba AUDI BELLINGHAM,<br><br>        Respondents. | No. 80400-6-I (consolidated with No. 81332-3)<br><br>ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |

The appellant, Emilio Kosrovani, has filed a motion for reconsideration of the opinion filed on June 1, 2021. The court has determined that the motion should be denied, but the opinion should be withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on June 1, 202 is withdrawn; and it is further

ORDERED that a substitute unpublished opinion shall be filed.

Andrus, A.C.J.

Coburn, J.

Hazelrigg, J.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| EMILIO M. KOSROVANI, a single individual,<br><br>     Appellant,<br><br>  v.<br><br>ROGER JOBS MOTORS, INC. dba ROGER JOBS AUDI, VW, PORSCHE dba AUDI BELLINGHAM,<br><br>     Respondents. | No. 80400-6-I (consolidated with No. 81332-3)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

ANDRUS, A.C.J. — Emilio Kosrovani, an attorney, appealed the summary judgment dismissal of his pro se complaint against Roger Jobs Motors, Inc. (RJM). While that appeal was pending, Kosrovani and RJM entered into a Civil Rule 2A (CR 2A) settlement agreement that required him to execute a release of his claims, dismiss his lawsuit, and withdraw his appeal. Kosrovani refused to do so. The trial court granted RJM's motion to enforce the agreement and entered an order to that effect without this court's permission as required by RAP 7.2(e). Kosrovani then appealed the enforcement order. We retroactively grant permission to the trial court to formally enter the order enforcing the settlement. On the merits of Kosrovani's appeal of this order, we conclude the trial court did not err in deeming the settlement agreement enforceable. Because that agreement requires

Kosrovani to withdraw his appeal, his challenge to the summary judgment dismissal of his lawsuit against RJM is moot. We affirm the order enforcing the settlement agreement and dismiss the remaining appeal as moot.

## FACTS

RJM operates a car dealership and service department in Bellingham. On November 9, 2018, Kosrovani filed a pro se personal injury lawsuit against RJM asserting claims of premises liability, negligence, and loss of consortium on behalf of his domestic partner Laurel Hansen. The complaint alleged that on November 16, 2015, Kosrovani sustained "traumatic injury to his brain and severe neurological injuries" while walking towards the exit door of RJM's showroom.

On February 1, 2019, RJM moved for summary judgment dismissal of Kosrovani's claims on the ground that he lacked admissible evidence that RJM breached any duty owing to him or that RJM proximately caused the alleged injuries. RJM further argued that Kosrovani could not prosecute a loss of consortium claim on behalf of Hansen, who was not identified in the complaint as a party, because he was neither married nor in a state-registered domestic partnership with her as required by RCW 4.08.030. On March 8, 2019, the trial court dismissed Kosrovani's loss of consortium claim but continued the hearing on his remaining claims for one week.

Kosrovani opposed RJM's motion and submitted evidence, through witness declarations, medical records, and Social Security Administration correspondence, to support his claims. He also filed an amended complaint that omitted all claims arising from loss of consortium on Hansen's behalf and alleged that his injuries

were caused by exposure to an unknown environmental hazard or contact with electrical current or electromagnetic forces.

On March 15, 2019, the trial court granted summary judgment dismissal of Kosrovani's remaining claims. The court subsequently denied Kosrovani's motion for reconsideration. Kosrovani filed a notice of appeal.

On December 18, 2019, while the appeal was pending, Kosrovani and RJM mediated the dispute and entered into a "CR 2A Memorandum of Settlement." The agreement stated that "the above matter . . . has been settled at mediation on the following terms: Insurer will pay to the claimant's attorney in trust $15,000 . . . two weeks from obtaining the signed release." The agreement further provided that "[t]his settlement is conditioned upon execution of a full release of all claims by Claimants/Plaintiffs against Defendants and Defendant's insurers" as well as the following other agreed terms and conditions: (1) dismissal of the lawsuit and withdrawal of the appeal upon receipt of the funds, (2) acknowledgement that RJM's non-liability has been litigated and determined by the court, and (3) confidentiality of the settlement agreement. The agreement specified that "[o]ther than as stated above, there are no additional representations or agreements of the parties." Although Kosrovani was represented by counsel during the mediation, he signed the agreement himself. Counsel for RJM also signed the agreement.

Pursuant to the agreement, RJM sent Kosrovani a "Release and Settlement of Claims" for his signature. When Kosrovani refused to sign the release or dismiss the appeal, RJM filed a motion in the trial court to enforce the agreement.

Kosrovani opposed the motion and filed a motion for leave to file a second amended complaint joining Hansen as a party.

On February 28, 2020, the trial court granted RJM's motion to enforce the agreement but struck from the "Release and Settlement of Claims" document a paragraph relating to any reference to indemnification for subrogation claims. The court struck Kosrovani's motion to amend the complaint as moot. The court ordered Kosrovani to sign the amended version of the "Release and Settlement of Claims," dismiss all claims in the lawsuit, and withdraw his appeal. The court later denied Kosrovani's motion for reconsideration. Kosrovani appealed, and this court consolidated his two appeals for review.

## ANALYSIS

Kosrovani challenges both the order enforcing the settlement agreement and the summary judgment dismissal of his claims against RJM. If we conclude that the trial court properly enforced the settlement agreement, then Kosrovani's challenge to the dismissal of his complaint will be rendered moot. "A case is moot when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief." Spokane Research & Def. Fund v. City of Spokane, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005). We therefore begin our analysis with Kosrovani's challenge to the enforcement order.

Kosrovani first contends the trial court lacked jurisdiction to enforce the postjudgment settlement agreement because RJM failed to follow the proper

4

procedure set forth in RAP 7.2(e) to pursue postjudgment relief at the trial court during the pendency of an appeal.

Under RAP 7.2(e), the trial court has authority to hear and determine:

(1) postjudgment motions authorized by the civil rules, the criminal rules, or statutes, and

(2) actions to change or modify a decision that is subject to modification by the court that initially made the decision. The postjudgment motion or action shall first be heard by the trial court, which shall decide the matter. If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision. A party should seek the required permission by motion.

RJM correctly notes that RAP 7.2(e) did not bar the trial court from considering RJM's postjudgment motion to enforce the settlement agreement. But Kosrovani is correct that the relief RJM sought, if granted, would affect the outcome of the summary judgment appeal by rendering it moot. Therefore, pursuant to RAP 7.2(e), RJM should have sought and obtained permission from this court to enter the order enforcing the settlement agreement before it was formally filed. Instead, RJM filed a motion in this court to dismiss the summary judgment appeal, which a commissioner dismissed as premature. We agree that RJM did not follow the proper procedure under RAP 7.2(e) to pursue postjudgment relief.

But this violation of RAP 7.2(e) does not mandate reversal. RAP 1.2 vests this court with discretion to overlook procedural imperfections. See RAP 1.2(a) ("[t]hese rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits"). Had RJM sought permission to file the order, we would have granted it. And the parties have fully briefed the merits of their arguments regarding enforceability of the settlement agreement. We therefore

exercise our discretion to retroactively grant permission for the trial court to formally enter the enforcement order and reach the merits of the issue.[1]

Kosrovani argues the trial court erred by enforcing the settlement agreement because there is a genuine factual dispute as to its material terms. We disagree.

We review an order enforcing a CR 2A settlement agreement de novo, as with a summary judgment order. Condon v. Condon, 177 Wn.2d 150, 162, 298 P.3d 86 (2013). The party moving to enforce a settlement agreement has the burden of proving that no genuine dispute exists over the existence and material terms of the agreement. Brinkerhoff v. Campbell, 99 Wn. App. 692, 696-97, 994 P.2d 911 (2000). We must view the evidence in the light most favorable to the nonmoving party and determine whether reasonable minds could reach but one conclusion. Condon, 177 Wn.2d at 162. If the nonmoving party raises a genuine issue of material fact, a trial court abuses its discretion if it enforces the agreement without first resolving such issues following an evidentiary hearing. Brinkerhoff, 99 Wn. App. at 697.

CR 2A provides as follows:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

---

[1] Kosrovani argues that RAP 7.2(e)(1) and (2) are inapplicable to RJM's motion. We agree that RAP 7.2(e)(2) does not apply in this situation. However, RAP 7.2(e)(1) authorizes the trial court to hear and determine "postjudgment motions authorized by the civil rules." Here, the postjudgment motion to enforce the CR 2A agreement expressly stated that the settlement was conditioned upon "dismissal of lawsuit and withdrawal of appeal." Because CR 2A applies to agreements "in respect to proceedings in a cause," the trial court was authorized to hear and determine RJM's motion pursuant to RAP 7.2(e)(1).

"The purpose of CR 2A is to give certainty and finality to settlements."  Condon, 177 Wn.2d at 157.  CR 2A applies to preclude enforcement of an agreement only when the agreement was made by the parties or attorneys "in respect to the proceedings in a cause" and the "purport" of the agreement is disputed.  In re Marriage of Ferree, 71 Wn. App. 35, 40, 856 P.2d 706 (1993).  "The purport of an agreement is disputed within the meaning of CR 2A if there is a genuine dispute over the existence or material terms of the agreement."  Cruz v. Chavez, 186 Wn. App. 913, 919-20, 347 P.3d 912 (2015).  "A litigant's remorse or second thoughts about an agreement is not sufficient" to create a genuine dispute.  Lavigne v. Green, 106 Wn. App. 12, 19, 23 P.3d 515 (2001).  "Where the CR 2A requirements are met, a motion to enforce a settlement is a commonly accepted practice."  Condon, 177 Wn.2d at 157.

Normal contract principles apply to the interpretation of a CR 2A settlement agreement.  Morris v. Maks, 69 Wn. App. 865, 868-69, 850 P.2d 1357 (1993).  We review a trial court's interpretation of the language of a contract de novo.  In re Marriage of Pascal, 173 Wn. App. 836, 841, 295 P.3d 805 (2013).  The primary objective of contract interpretation is to determine the parties' mutual intent at the time they executed the contract.  Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712, 334 P.3d 116 (2014).  We do so by focusing on the objective manifestations of the agreement rather than the subjective intent of the parties.  Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).  "Courts will not revise a clear and unambiguous agreement or contract for

parties or impose obligations that the parties did not assume for themselves."
Condon, 177 Wn.2d at 163.

Kosrovani first argues that the settlement agreement is unenforceable under CR 2A because it was not signed by the attorney who represented him at the mediation. He cites In re Patterson, 93 Wn. App. 579, 584-85, 969 P.2d 1106 (1999) for the proposition that a party's signature will suffice only if the parties enter into settlement without attorney involvement. Kosrovani reads this case too narrowly. In Patterson, the parties mediated and signed a CR 2A settlement agreement without their attorneys present. Patterson argued that the agreement was not enforceable because it was not signed by his attorney. This court, noting that "[t]he rule clearly anticipates that parties may directly enter into settlements," held that "[w]hen the party undertakes a settlement directly with the other party, reduces it to writing, and signs it, as in this case, the requirements of CR 2A are met just as if the attorney had participated." 93 Wn. App. at 585. Kosrovani, an attorney, was present with his counsel at the mediation. His signature on the agreement indicates his assent to its terms. The absence of his counsel's signature does not render the agreement unenforceable.

Kosrovani also argues that the CR 2A agreement is unenforceable without the signature of Hansen, whom he describes as a "claimant" and a "real party in interest." See Ebsary v. Pioneer Human Servs., 59 Wn. App. 218, 226-28, 796 P.2d 769 (1990) (upholding order vacating judgment based on settlement agreement that encompassed children's claims without authorization). But Hansen was not a party to the litigation below and is not a party to this appeal.

There is no dispute that the CR 2A settlement agreement does not extinguish her potential claims. Her signature is not required to make the settlement enforceable as against Kosrovani.

Kosrovani next contends that, under the terms of the CR 2A settlement agreement, his execution of a release was a condition precedent to the existence of a valid settlement agreement, and not a promise of future performance. He relies on the clause that reads "[t]his settlement is conditioned upon execution of a full release of all claims." He argues that this language evinces only a conditional intent, not a binding one, and that the settlement fails if the release is not executed for any reason. We disagree.

The agreement plainly states that the matter "has been settled" upon payment of the sum of $15,000. Kosrovani's interpretation would render the mediation process and the CR 2A settlement agreement pointless by giving him free rein to decide at a later date whether or not to actually sign the release he agreed to sign to settle the matter. "Where one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the latter more rational construction must prevail." Better Fin. Sols., Inc. v. Transtech Elec., Inc., 112 Wn. App. 697, 712 n. 40, 51 P.3d 108 (2002) (quoting Byrne v. Ackerlund, 108 Wn.2d 445, 453-54, 739 P.2d 1138 (1987)). Kosrovani's execution of the release was the required performance of his promise in the settlement agreement. His failure to execute the release breached that promise.

Lastly, Kosrovani maintains the CR 2A settlement agreement is unenforceable because it did not include all material terms as to the scope of the release. He points out that the "Release and Settlement of Claims" that RJM drafted contained a clause requiring him to indemnify RJM from any subrogation claims that his insurers and medical providers might have. The CR 2A agreement, as he correctly points out, was silent on this issue. But the fact that RJM included a provision over which the parties did not negotiate in the release document does not render unenforceable the remaining terms to which they did agree.

It is undisputed that Kosrovani agreed to dismiss his lawsuit against RJM and to withdraw his appeal as a part of the settlement. This language supports the conclusion that Kosrovani agreed to execute a general release; a dismissal with prejudice has the legal effect of precluding future claims. Condon v. Condon, 177 Wn.2d at 164. The trial court thus had the authority to compel Kosrovani to execute a general release.

A provision requiring a settling plaintiff to defend and indemnify a defendant from subrogation claims, however, is outside the scope of a general release and cannot be implied in a settlement agreement. Id. at 164. The trial court acknowledged that the "Release and Settlement of Claims," as proposed by RJM, included an indemnification provision that was not discussed in the CR 2A settlement agreement. The trial court correctly struck the indemnification clause from the "Release and Settlement of Claims" document because the parties had not agreed to it.

Kosrovani argues that the fact the trial court struck this language from the "Release and Settlement of Claims" proves that the parties had not reached agreement on all material terms. RJM, however, indicated that the indemnification clause was not material and it "offered to remove that language from the release, so that [Kosrovani was] not waiving those claims on behalf of other third parties." The court acknowledged this offer and removed the disputed indemnification clause from the release before ordering Kosrovani to sign it. The court did not require Kosrovani to accept a settlement term to which he had not agreed.

The trial court did not err in granting RJM's motion to enforce the CR 2A agreement and ordering Kosrovani to sign the amended "Release and Settlement of Claims" and to dismiss his claims. Because our decision moots Kosrovani's appeal of the dismissal of those claims, we need not reach the parties' arguments raised in that appeal.

Affirmed.

Andrus, A.C.J.

WE CONCUR:

Coburn, J.